44 C.C.P.A.(Patents).
**Application of Neal A. PENNINGTON.**

**Patent Appeal No. 6250.**

United States Court of Customs and Patent Appeals.

Feb. 21, 1957.

Worley, Judge, dissented.

Roger Sherman Hoar, Milwaukee, Wis., for appellant.

Clarence W. Moore, Washington, D. C. (J. Schimmel, Washington, D. C., of counsel), for Commissioner of Patents.

Before JOHNSON, Chief Judge, and WORLEY, RICH and JACKSON, retired, Judges.

JOHNSON, Chief Judge.

This is an appeal from a decision of the Board of Appeals of the United States Patent Office, rejecting claims 9–15, the only remaining claims in ap-

pellant's application for a patent for a "Rotatable Evaporative Cooler for Air-Conditioning," as unpatentable over the prior art. Appellant's petition for reconsideration of the decision was granted by the board but resulted only in a modification of its opinion, without any change in the decision rendered.

Claims 9 and 14, which are illustrative of the appealed claims, read as follows:

"9. A rotatable wheel-like casing, divided into sectors, and adapted to hold packing for use as an evaporative cooler for an air-conditioning unit, said casing having spokes, a hub, and a rim, all of substantially the same width in an axial direction, and all having at each face of the casing flanges projecting into the sectors bounded thereby, the flanges of the spokes projecting in both directions therefrom, and the entire rim being imperforate.

"14. A rotatable evaporative cooler for an air-conditioning unit, comprising: a wheel-like casing, divided into sectors, by having spokes, a hub, and a rim, all of substantially the same width in an axial direction, and all having at each face of the casing flanges projecting into the sectors bounded thereby, the flanges of the spokes projecting in both directions therefrom, and the entire rim being imperforate; and a packing of filamentous water-absorbing material completely filling each of the sectors of said casing, said packing being packed into each sector with such compactness as to be freely air-permeable and yet be so self-sustaining as to be substantially immovable with respect to the casing during the rotation of the casing even in a vertical plane."

The invention relates to a rotatable evaporative cooler unit in air-conditioning apparatus. The cooler unit comprises a wheel-like casing, including a hub, a rim and spokes dividing the wheel into sectors. The hub, rim and spokes are each of identical axial extent. Each of the sectors, bounded by the spokes and rim, is stuffed completely with a filamentous, water-absorbing, air-permeable material, such as excelsior. The spokes, hub, and the rim are each provided, at each face of the casing, with flanges projecting into the sectors, the flanges of the spokes projecting to each side thereof.

The rim and the outer portion of the spokes are imperforate, while the inner portions of the spokes contain perforations.

The cooler unit is designed to rotate in a vertical plane with approximately its lower one-quarter being submerged in water. Air is drawn through its upper three-quarters, evaporating the water therein, and thus cooling the air.

In this environment, it is apparent that the flanges are provided not only to hold the excelsior in place, but, as well, to cooperate with the imperforation of the rim and the outer halves of the spokes to confine within the wheel the water which is imbibed by the stuffing as the wheel rotates. The perforations in the inner halves of the spokes serve to distribute this water from sector to sector as the wheel revolves.

The references relied upon are: Benson et al., 1,240,656, Sept. 18, 1917; Cruyt, 1,450,951, Apr. 10, 1923; Wood, 1,762,320, June 10, 1930; Fenske, 2,037,317, Apr. 14, 1936; Cooper, 2,427,714, Sept. 23, 1947.

The Benson et al. patent discloses a wheel-like evaporative cooler unit having a hub, an imperforate rim and spokes. The unit is mounted with its lower portion submerged in a trough of water and its upper portion subjected to a stream of air. One edge of each of the spokes is either perforated throughout its length or provided with a slot throughout its length which slot is formed by providing a flange-like metal strip spaced from said edge. The other edge of each spoke is flanged in a forward direction. Extending between the spokes are foraminous sheets which are

supplied with water by partial submersion as well as by water picked up by the spokes during rotation and fed to said sheets through the perforations or slots described above.

The Wood patent discloses a rotary air heater in which the air is heated by passing it over heat-exchange material which has been previously heated by passing a heating medium thereover, such as flue gas. This heater comprises a cylindrical member having a hub, spokes and a rim, all of similar axial extent. Each side of the member is closed by flanges extending inwardly from the rim and outwardly from the hub and by foraminous sheets extending therebetween. The sector shaped spaces thus formed are partially filled with heat-exchange material such as lathe cuttings or coils of wire. The rim is completely sealed when in operation.

The Cooper patent discloses an air conditioner which includes an evaporative cooler comprising a hub, wire spokes, an imperforate rim and a filling of excelsior.

The Cruyt patent was cited by the examiner for its disclosure of the use of metal masses, such as those used by Wood, in evaporative coolers.

The Fenske reference discloses the use of metal masses in vapor-liquid contact apparatus.

All the claims on appeal were rejected by the board as unpatentable over a combination of the Benson et al., Wood and Cooper references on the ground that the various elements recited in the claims were shown by said combination of references.

To quote from the board's opinion:

" * * * Benson et al. teach the imperforate rim supported from a hub by flanged blades which are perforated or slotted to deliver water picked up by the flanged blades to an evaporation element. It is true that the blades are disclosed as tapered and the hub as of somewhat greater axial extent than the rim. However, the patent to Wood discloses a rim, hub and spokes of the same axial extent and to similarly dimension the hub, spokes and rim of Benson et al., in our opinion, would produce no unobvious or unexpected result. To employ an excelsior evaporation element in such a construction we consider to be a matter of choice in view of Cooper. We are aware that the Benson et al. device is disclosed as rotated by the air stream. However, Wood teaches the use of mechanical power for a similar purpose. Wood also discloses flanging the rim and hub. We are well aware that the slot and perforations controlling the delivery of water picked up by the flanged spokes of Benson et al. extend into the outer as well as the inner portion of the blades, but we see no unexpected result flowing from omitting the slots or perforations and their functions in the outer portion of the blades, if desired. Also, when employing an excelsior evaporation element, in our opinion, it would be uninventive to provide a plurality of slots or perforations disposed across the blades. We also note that grooves 19 of Benson et al., lead the water to desired perforated or slotted zones."

In its decision, the board made no statement as to which reference was considered to be the primary one, although in its decision on reconsideration, the board stated that either the Benson et al. or the Wood patent could be considered as the primary reference.

It is appellant's contention that regardless of which of the three references is selected as the primary reference, there are four features recited in his claims which are not shown:

"1. Flanges on the spokes, at each face of the casing, projecting in both directions therefrom.

"2. The perforation of approximately the inner half of each spoke.

"3. The imperforateness of the outer half of each spoke.

"4. Sectors completely filled and firmly packed with excelsior or the like."

Inasmuch as claim 9 is the broadest of the claims on appeal, the other claims containing at least each element recited therein, we will consider the board's rejection of this claim alone. The remaining claims will necessarily stand together with claim 9 if, in fact, claim 9 is deemed patentable.

At the outset, we deem it necessary to evaluate the Wood patent as to the weight to be accorded it as a prior art reference against claim 9. As aforestated, the board was of the opinion that, viewing Benson et al. as the basic reference, the flanges on both the rim and hub of the Wood apparatus, as well as the teaching of Wood as to the similarity in axial extent of the hub, rim and spokes could be used to supply the deficiencies in the Benson et al. teachings. Presumably, as well, viewing Wood as the basic reference, the board would supply the deficiency therein (the absence of flanges on the spokes) by means of the teachings in Benson et al.

We are of the opinion that the modification of neither reference may be made by means of the other, and that unless Wood may be said to anticipate claim 9 without any modification, it must be disregarded as a reference against said claim.

It is well established that, where two or more prior art references are combined to negative patentability, the test to be applied is: does the prior art suggest doing what an applicant has done. In re Fridolph, 134 F.2d 414, 30 C.C.P.A., Patents, 939; In re Shaffer, 229 F.2d 476, 43 C.C.P.A., Patents, 758. It is also said that it must be considered whether one skilled in the art, with the references before him, could have made the combination of elements claimed without the exercise of invention. Shaffer case, supra.

Applying these rules to the instant case, it is difficult to see how the Wood and Benson et al. references may be combined. The problems involved in each of the references are entirely different. The spoke flanges of Benson et al. are employed as a means of retaining water of the individual spokes as they are rotated. No similar problem exists with respect to the Wood apparatus. Similarly, the hub and rim flanges of Wood are clearly provided so that "at no time will there be free passages through which air or gas can short circuit to destroy the effectiveness of the heater." This requirement results, of course, from the fact that each of the sectors in the Wood apparatus is not completely filled with heat exchange material, thus leaving air spaces. No similar problem exists with respect to the Benson et al. apparatus. Despite the entirely different problems with which each of these two references is concerned, the board would nevertheless modify either of the apparatuses shown by the disclosure of the other. This we cannot do, for the foregoing considerations compel us to conclude that one skilled in the art, with the Wood and Benson et al. references before him, would not have made the combination of elements present in claim 9.

Nor is the Wood reference adequate standing alone. In the brief for the Commissioner it is argued that it would be obvious to one skilled in the art to provide flanges on the spokes of Wood for the purpose of retaining the packing in the casing if it were found that the packing tended to be displaced. (This is one of appellant's stated purposes of his spoke flanges.) With this contention we do not agree. Due to the nature of the Wood apparatus, foraminous screens are provided at the sides of the casing thereof not only to retain the loose packing but to allow an open passage through which the air and hot gas may pass. There would be no reason to provide flanges on the spokes in such an apparatus, for not only would it serve no useful purpose, but, in fact, it would detract from the available open passage through which the air and gas might flow. Such indiscriminate modification of a reference to anticipate an alleged invention is improper. We are of the opinion that the Wood patent must be removed from further consideration in this case.

It remains to be decided whether or not the combination of the Benson et al. and Cooper references is sufficient to negative the patentability of claim 9.

Claim 9 differs from the apparatus shown by Benson et al. in that:

1. The spokes, hub and rim of the former are of the same axial extent whereas the spokes of the latter are tapered;

2. The rim and hub of the former are provided with flanges whereas those of the latter are not;

3. The spokes of the former are provided with flanges extending in both directions whereas the spokes of the latter are similarly provided only at one face of the casing, the edge of the spokes at the other face having flanges projecting only in a forward direction.

We find no patentable significance in the first difference. We feel, however, that the other differences spell out invention.

Appellant states in his specification, as the advantage of providing the flanges recited in claim 9, that they "serve to hold the stuffing in place, but especially serve to confine the water which flows downwardly by gravity through the evaporative cooler as the pad slowly rotates." The Commissioner, in his brief, stated that "It is believed to be obvious that the use of flanges on those members to insure holding the packing in the sectors would occur to the ordinary mechanic, if it were found that the packing tended to be displaced * * *." With this we cannot agree. It is to be noted that the Cooper apparatus, which comprises a wheel-like casing stuffed with excelsior, is provided with no such flanges. Cooper, instead, preferred to employ a combination of a wire support, extending circumferentially around the interior of the casing, and four wire spokes to retain the packing in the casing. It would as well be obvious to use supports similar to those of Cooper as to use the flanges of appellant for this purpose. But appellant's flanges serve a more important

purpose: "especially * * * to confine the water which flows downwardly by gravity through the evaporative cooler, as the pad slowly rotates * * *." For this latter purpose, supports such as are shown by Cooper would be inadequate.

■ We are not unmindful of the fact that it might be said that the modifications of appellant over the prior art apparatus do not produce what would normally be termed "new and unexpected results." We are of the opinion, however, that this consideration is not the determinant here, for it is well recognized that in many cases invention may consist in one or both of two steps: 1) the conception of the general result wished for; 2) the actual means of achieving that result. In re Shaffer, supra; In re Earle, 102 F. 2d 232, 26 C.C.P.A., Patents, 974. In the instant case, an essential portion of appellant's contribution to the art resided in appreciating that in the prior art evaporative coolers, maximum efficiency could not be obtained due to the inability of the cooler unit to retain sufficient amounts of water throughout its period of contact with the air to be cooled. Once having appreciated this problem, it might be that one skilled in the art would construct appellant's apparatus without the further use of the inventive faculty. This latter possibility does not detract from the inventive nature of the initial concept.

■ Claim 9 is therefore deemed allowable. We find nothing in the Cruyt or Fenske references to alter our conclusion as to the patentability thereof. The remaining claims in this case, for reasons aforestated, stand allowable along with claim 9.

The decision of the Board of Appeals is accordingly *reversed* and this case *remanded* for action not inconsistent with this decision.

Reversed and remanded.

JACKSON, J., retired, recalled to participate in place of COLE, J.

WORLEY, Judge (dissenting).

I respectfully dissent from the conclusion reached by the majority of the court that the claims here involved define a patentable invention. While all the subject matter set forth in the appealed claims is not found in any one reference, each of the elements claimed is shown in the prior art and, as combined in the appealed claims, such elements perform their old functions and no new or unexpected result appears to have been produced. Accordingly, I am of the opinion that the Patent Office tribunals properly held that the appealed claims fail to define invention over the references cited, and that the decision appealed from should be affirmed.