52 CCPA

**Application of John J. LAINSON.
Patent Appeal No. 7239.**

United States Court of Customs
and Patent Appeals.
Dec. 17, 1964.

Augustus G. Douvas, Vienna, Va., for appellant.

Clarence W. Moore, Washington, D. C. (J. F. Nakamura, Washington, D. C., of counsel), for the Commissioner of Patents.

Before WORLEY, Chief Judge, and RICH, MARTIN, SMITH, and ALMOND, Judges.

MARTIN, Judge.

This appeal is from a decision of the Board of Appeals of the United States Patent Office affirming the examiner's rejection of claims 1 through 8 of appellant's application, serial No. 676,850, filed August 7, 1957, for Plastic Pipe as unpatentable over the prior art. No claims are allowed.

The application discloses a pipe made up of two concentric layers of a plastic material, such as polyethylene. The pipe is described as comprising an inner, hollow, cylindrical core of translucent, unadulterated polyethylene "molecularly bonded" to an outer cylindrical layer of polyethylene containing carbon black, which acts as an ultraviolet ray protective agent and renders the outer layer opaque. It is pointed out in the application that while many pure plastics such as polyethylene are normally translucent, they must be protected against deterioration from ultraviolet light. The application states that it therefore was the common industrial practice in the prior art to incorporate into the pure plastic resins an agent, such as carbon black, for the purpose of affording protection against such light. However, the opacifying effect of the carbon black is said to prevent determination of the presence of inferior and foreign constituents in the plastic by visual inspection, as might otherwise be done.

Incorporating the carbon black in only the outer layer of the pipe, as appellant

does, is said to permit a prospective purchaser to determine that the inner translucent layer of the pipe is free from foreign material by visual inspection while the carbon black in the outer layer protects the entire pipe from deterioration by ultraviolet rays.

Claims 1 and 2 are representative and read:

"1. A plastic pipe fabricated from a solid moldable translucent organic polymer that is subject to deterioration upon exposure to ultra violet rays, comprising an inner cylindrical hollow core of said plastic in virgin and unadulterated form in natural color and texture, and an outer layer of said plastic molecularly bonded to the inner core and containing an ultra violet ray protective agent rendering the outer layer opaque.

"2. The pipe of Claim 1, in which said plastic is polyethylene and said protective agent is carbon black."

The references relied on are:

Davis et al. 2,645,249 July 14, 1953
Brown      2,690,769 Oct.  5, 1954
Rosen      2,824,575 Feb. 25, 1958

The Davis et al. patent relates to polyvinyl chloride plastic tubing having the properties desired for use as garden hose. It indicates that the incorporation of selected additives homogeneously throughout the tubing has not provided a fully satisfactory product for that purpose. The patentees obtain the desired properties by making the tubing in two concentric layers fused together to form a laminated structure with the composition of each layer being such that it "has properties rendering it especially suitable for a purpose differing from the outer layer." Thus, the inner layer may include a plasticizer to impart flexibility, tensile strength and bursting strength. The outer layer may include additives to impart high abrasion and weather resistance, to impart a glossy surface and to protect the entire tube structure against ultraviolet rays.

The Brown patent discloses a laminated hose making use of the chemical inertness of polyethylene and the flexibility and abrasion resistance of rubber. It comprises an inner, hollow polyethylene tube and an outer rubber layer, with braided textile therebetween.

The Rosen patent discloses a flexible, extruded polyethylene tube used for conducting air from an air conditioning unit.

The examiner rejected claims 1, 3, 5 and 7, which are drawn broadly to include any plastic, as unpatentable over Davis et al., and claims 2, 4, 6 and 8, limited to polyethylene, as unpatentable over Davis et al. in view of Brown or Rosen. He additionally rejected all the claims as unpatentable over the usual commercially available polyethylene tubing in view of Davis et al.

While the board affirmed all those grounds of rejection, it seems to us that the appeal is most readily determined on the basis of the last-mentioned ground. In considering that aspect of the rejection, the board stated:

"We are also in agreement with the view of the Examiner that it would be obvious to provide the usual milky-white polyethylene tubing of commerce with an opaque coating of the same polymer containing an ultraviolet screening material in [sic] manner suggested by Davis et al. The fact that polyethylene had desirable properties for pipes but was susceptible to deterioration by ultraviolet radiation was known to the prior art so that the Davis et al. patent was clearly addressed to the solution of the problem of screening the ultraviolet radiation from this as as [sic] well as any other known desirable plastic pipe material. * * *"

Appellant argues that none of the prior art is concerned with his solution of the problem of quality control of plastic pipe by permitting purchaser inspection of the pipe, and that his "concept of a laminated plastic pipe construction in which the

inner and outer layers differ only by the inclusion of an opaque rendering agent in the outer layer so as to permit quality inspection is not suggested by the prior art."

The state of the prior art as to polyethylene pipe is made clear from the record, including appellant's application. Thus, polyethylene pipe of natural translucent color and texture throughout was known in the prior art. It was also known that translucent polyethylene must be protected from deterioration by ultraviolet light and a conventional practice was to provide that protection by incorporating carbon black into the pipe, rendering it opaque throughout.

Davis et al. add a teaching of a plastic tube comprising concentric inner and outer layers which are basically of the same plastic material but have different properties so that the composit tube offers advantages over a tube of uniform composition throughout. In fact, Davis et al. specifically disclose that the outer layer only be provided with an additive which acts as a light screen to supply protection from ultraviolet light "to all the material within the whole structure."

It being thus taught by Davis et al. that an additive in the outer layer of a plastic pipe can protect the whole pipe from the effect of ultraviolet light, we are satisfied that a person of ordinary skill in the art would find it obvious to employ an outer layer of opaque polyethylene having the conventional carbon black additive over an inner cylinder of translucent polyethylene tubing to provide similar protection. It is obvious that such a construction would permit retaining the inner and major portion of the pipe of the quality of the translucent material without danger of its being affected adversely by the carbon black additive.[1] We think it would also be apparent to a person of ordinary skill in the art that translucent polyethylene pipe would tend to reveal the presence of foreign matter while the carbon black in black pipe would tend to obscure such matter from view and that provision of a two-layer pipe would be an obvious way of providing superior inspection properties over black pipe.

Appellant has cited several decisions, in particular In re Earle et al., 102 F.2d 232, 26 CCPA 974; Smokador Mfg. Co. v. Tubular Products Co., 31 F.2d 255 (2d Cir., 1929); In re Shaffer, 229 F.2d 476, 43 CCPA 758, and In re Rothermel et al., 276 F.2d 393, 47 CCPA 866, as supporting his position that the appealed subject matter is not obvious from the prior art. The question of obviousness, however, is so closely tied to the facts of each particular case that prior decisions in cases involving different facts are ordinarily of little value in reaching a decision. The Earle and Smokador cases involved structures in entirely different arts in which substitution of glass for parts previously opaque permitted observation through the parts. We fail to see any analogy to the present case that would make those cases authority as to the question of whether appellant's structure is obvious. The Shaffer and Rothermel cases are even more remote on their facts.

Affidavits of Lainson, Jordan, Montell, Forslund and Dodds were submitted by

---

1. Appellant's application states:
   "It is known that the presence of carbon black can result in the inclusion of agglomerated particles of pigment which result in voids in the pipe wall and can act as points of stress concentration. The inherent danger of carbon black pigmentation is pointed up by a news article published by DuPont Corporation in their periodical, 'Pipe Facts', as follows:
   " 'Then, too, a pipe resin should have a good resistance to outdoor weathering. This means that carbon black at high quality and extremely fine particle size must be added * * * in such a way as to protect against sunlight without harming the mechanical properties of the plastic.'
   "Reference to harming the mechanical properties refers to the presence of agglomerated pigment particles in the resin which weakens the structure of the pipe wall."

appellant and we have considered them in the light of the contentions made in his behalf. We find nothing in the statements in the affidavits which relate to the state of the art and the references to show error in the board's decision. While the affidavits include some evidence of a preference in the industry for appellant's pipe,[2] they leave us unconvinced that such a preference arises from an unobvious advantage the pipe may provide rather than from the pipe being readily identifiable as a high grade product.

For the foregoing reasons, the decision of the board is affirmed.

Affirmed.

---

2. The affidavits refer to appellant's pipe as marketed under the "trademark 'KLEARCOR'."