**WILSON RESEARCH CORPORATION,**
Plaintiff,

v.

**PIOLITE PLASTICS CORPORATION,**
Defendant.

Civ. A. No. 62-586.

United States District Court
D. Massachusetts.

Feb. 28, 1963.

C. Yardley Chittick, Russell, Chittick & Pfund, Robert B. Russell, Boston, Mass., for plaintiff.

George W. Crowley, Boston, Mass., for defendant.

SWEENEY, Chief Judge.

This patent action originally involved two patents issued to the plaintiff on August 15, 1961. Before trial, the plaintiff disclaimed one of the patents—U.S. 2,996,417—which had been issued on an application filed June 1, 1960, so that there remain in suit only the claims of the other patent—U.S. 2,996,609—issued on an application filed July 7, 1958. While this case is concerned only with the questions of validity and infringement of this latter patent, reference will have to be made to the disclaimed patent in order to develop the chronology of the relationship between the parties and to get a full understanding of the claims set forth in the patent in suit.

The defendant attacks the validity of the patent on the grounds that the disclosure is insufficient to meet the requirements of Section 112 of Title 35, U.S.C. and because there is no proof of invention on the part of the plaintiff. The defendant also alleges that the action should be dismissed because the plaintiff comes before the Court with unclean hands.

### Findings of Fact

Both parties are engaged in the manufacture of "luminous ceiling panels," light diffusing plastic panels suitable for mounting below ceiling lighting fixtures. The active personality of the plaintiff, Bertram A. Wilson, and the principal of the defendant, Jack P. LaCava, have been acquainted for nearly ten years and were doing business even before the formation of the plaintiff and defendant corporations.

Prior to the development of the patent in suit, various types of luminous ceilings, plastic and metal, were on the market; but all had serious drawbacks. Some were fire hazards; some collected dirt; some were not sufficiently rigid

and sagged after a period of time. Both Wilson and LaCava were, therefore, looking for new and improved products and in the early part of 1958 Wilson conceived the basic idea of the patent in suit. He thought of vacuum forming vinyl sheets into identical shallow pans with evenly shaped and spaced indentations or "dimples" and flanges around the periphery and fusing two such formed sheets at the bottoms of the indentations and at the flanges. LaCava, in June or July 1958, made the original sample sheets for Wilson in accordance with a sketch of Wilson's. Wilson cemented two together and found that the panels had potential in that they were rigid and did not tend to sag, that they could be easily cleaned and that after punching holes through the abutting and sealed bases of the indentations, the panels could be used under sprinkler systems. On July 7, 1958 he applied for the patent in suit.

Wilson realized, however, that he could not commercially produce these panels by cementing two sheets; and he unsuccessfully experimented with a variety of sealing techniques, including electronic heat sealing. This method, while good in theory, presented a number of practical problems. Because the bottoms of the dimples were very thin and because the original vinyl sheets were not completely even, Wilson encountered a considerable amount of arcing; i. e., burning of the plastic and damage to the equipment. It is possible to so electronicly heat seal two dimpled sheets, but the method is not practical or economical. At LaCava's suggestion Wilson, in the summer of 1958, finally consulted one Peter Black of Thermotron Company in New York who advised using between the two panels a flexible membrane with a lower melting point than the panels. This was the solution to the scaling problem and the method for sealing the two sheets adopted by both parties for their commercial production.

On June 1, 1960 Wilson filed another patent application, which also issued August 15, 1961 and which is now dis-claimed, the only improvement of which over the patent in suit is the insertion of the membrane.

The defendant argues that, since the membrane is necessary to the successful commercial use of Wilson's idea, the patent in suit is invalid for deliberate failure to sufficiently disclose the invention in accordance with Section 112 of Title 35 and, thus, it is nothing but a paper patent. The argument is based on alternative interpretations of the events leading up to the first patent application that Wilson either knew he was not the originator of the idea of the membrane or hoped to work out a method of sealing without the membrane. I find the patent to be valid but shall interpret the claims therein as narrowly as befits the circumstances.

■ The drawings of the patent in suit show, and the patent describes, two dimpled sheets "in face to face contact" at the flanges and the bottoms of the dimples. The patent claims light diffusing ceiling units comprising, among other things, two dimpled sheets "arranged with the dimples and side walls extending toward and *abutting each other*," claims 1 and 6, or light diffusing units comprising an upper and lower dimpled sheet united with "the upper and lower sheets *registering with each other*," claim 3. The only reference the patent makes to the method of fusing the two panels is a passing mention "that they may be easily united, for example, by heat sealing." In view of the language of the claims and the failure of the patent to disclose any particular method of heat sealing the Court must hold that the invention is limited to the fusing, uniting or sealing of two panels directly to each other without the interposition of a membrane, cement or other substance.

The plaintiff contends that the patent is a generic or primary invention, that it includes all methods of sealing, and that .it is covered by the doctrine of Hildreth v. Mastoras, 257 U.S. 27, 28, 42 S.Ct. 20, 66 L.Ed. 112. But the patent claims only the union of abutting or registering

dimples and flanges. Wilson is entitled to no more than he claims. The fact that he later applied for a patent whose only improvement over the patent in suit was the use of an adhesive membrane between the panels is hardly consistent with the claim for a broad range of equivalents. I find that this is a narrow patent limited to a panel comprising two dimpled sheets sealed together without any intermediate membrane.

I do not find any evidence of unclean hands with respect to the application of the patent in suit.

The defendant's panels do not infringe the patent as the defendant uses the membrane in all of its products.

### Conclusions of Law

 I find and rule that patent U.S. 2,996,609 is valid but that the defendant does not infringe upon it.

Judgment may be entered accordingly.